Good morning, Your Honors. May it please the Court, my name is Mala Rafiq and I'm here today with Stephen Rosenfeld representing Mark Dutkewych. The Standard argues that this case has previously been decided by this Court in Gent v. CUNA. In fact, as I will highlight, shows three ways why the Standard's decision in this case was an abuse of discretion. First, CUNA performed its analysis at the two-year mark as required by both policies. The Standard did not. Second, the record in Gent supported CUNA's two-year mark. Excuse me. Yes, Your Honor. I don't believe that assertion is correct. I believe there is a dispute among the parties as to what evidence can be considered as pertinent to the two-year mark. But to say that there was not a review at the two-year mark strikes me as not being supported by the record. Which argument are you making? I'm making the argument, and thank you, Your Honor, for clarifying that for me. I'm making the argument that the review that Standard conducted at the two-year mark regarding Mr. CUNA in 2011 reached back to medical evidence that existed in 2008 and 2009 to certify his disability at that time. I understand your position. It is that at that point in time, it was like a new book, not a new chapter. You did not go back and say, well, what happened before? Your argument, I think, is that you're only supposed to look at the evidence as it was at that point. That's correct, Your Honor. Okay. Then let's test that, because there were several bits of evidence, including your client's admission, made in 2011. What is the period of time that you say the company could have the June 2011 two-year date was relevant? Certainly, Your Honor. So the way the plan works is that in June 2011, you look to see whether a physical disability independently caused Mr. Dukovic's disability. So I'm not saying that nothing that happened, Mr. Dukovic's medical history prior to that date is irrelevant. But what's relevant is what the medical evidence showed at that time. So you're correct. I believe it was April 2011, my client said, I suffer primarily from joint pain, joint and muscle pain, fatigue, and cognitive limitations. He also said I have depression. The only treatment provider at that time that was treating him for depression was Sheila Statlander. In March of 2011, Dr. Statlander wrote the standard at its request, saying Mark suffers from secondary depression due to the many losses he's experienced in his life. But his depression is stable. His mental illness is stable. And it's not his disability now, however, is due to chronic Lyme disease. Okay. I'm sorry. I threw you off from your three main points. We better get them on the table, and then we'll probe them. Well, thank you, Your Honor. And actually, this was my second point. So you just moved me along. My second point was simply that the record in GENT supported Ms. GENT's disability due to chronic Lyme disease, and that Dr. Dukovic suffered from substance abuse, mental illness, or fibromyalgia at the two-year mark. Excuse me. Yes, Your Honor. Again, let's probe that just a little bit. Certainly. They had evidence from him that he was suffering from depression at that time period. Yes. Why would a decision contrary to your proposition be arbitrary in the face of that in the record? Because suffering from depression is very different from being disabled as a result of depression. So the question is not whether Mr. Dukovic had the symptoms, whether he had depression or whether he had cognitive limitations. The question is what disabled him at that time. And there are three, the standard, and let me rephrase that, the standard has one psychologist on record that it asked to review Mr. Dukovic's file. That psychologist could not conclude that a psychiatric condition disabled Mr. Dukovic. Didn't the company offer him yet another psychiatric examination around this time period if there were any doubts about it and he declined to undergo that evaluation? So that offer, Your Honor, actually was not at this time period. It was in April of 2012 prior to the final decision that was made on Mr. Dukovic's case. So at that time... Why does that matter? It matters because of this. At that time, Mr. Dukovic had already undergone independent neuropsychological testing with Dr. Leo Hsieh in May of 2011, two-day testing that revealed that depression did not cause Mr. Dukovic's symptoms, but in fact his symptoms were consistent with individuals that Dr. Hsieh in his vast experience had seen in individuals suffering from chronic Lyme disease. In April 2010, the standard said, look, we can offer to send Mr. Dukovic to another forensic exam, but let me be clear, we believe that that exam is going to show depression as the cause, and I quote this, we are not accepting Lyme disease as a diagnosis in this case. So it was an optional exam, and it was prefaced with the fact that we are not sending him to anyone that knows Lyme disease because we are not accepting Lyme disease as a diagnosis. So it wasn't as though the company was saying we're going to do an independent exam. What was your third major point? Thank you, Your Honor. My third major point was that if mental illness, substance abuse, and fibromyalgia don't exist on the record in June 2011, then the only evidence in the record as of that date is Lyme disease as the cause of Mr. Dukovic's disability. So if you're, if I, And a contrary conclusion is arbitrary because the evidence for that goes back several years? I can actually give you three reasons why a decision contrary to that is not supportive. First, the only psychiatric, and I've said this before, but I can't underscore it enough, the only psychiatric evidence on the record as of June 2011 did not support disability due to Lyme. Standards' own expert, Dr. Gant, did not support it, and Mr. Dukovic's treatment providers, Dr. Stoutlander, Dr. Raxlin, and Dr. Shea, all of whom are psychiatric providers, said that Mr. Dukovic was not disabled due to Lyme. The second reason why chronic Lyme is the only evidence left on the record to explain Mr. Dukovic's undisputed disability at that time is that Mr. Dukovic had blood tests, well, had a lot of objective evidence that supported his diagnosis of Lyme and his disability as a result of it. And here I really want to make a comparison to Gent. Judge Howard and Gent found three pieces of evidence that were compelling to him as to why Ms. Gent did not have Lyme at the time. The first was a brain spec scan. Now, Mr. Dukovic has a brain spec scan that was consistent for Lyme. It was read by Dr. Isselbacher, performed at Brigham and Women's Hospital, but she didn't rest on her diagnosis alone. She called doctors from Johns Hopkins, from Columbia, and from Beth Israel and said, what do you think based on these spinal tap results? And based on their consultation with her, they decided Mr. Dukovic had chronic Lyme. Now, the second is the blood test results. In Gent, Ms. Gent did not have supportive blood test results for Lyme. Mr. Dukovic, in contrast, has a November 2008 Western Blot that was consistent with Lyme, a December 2010 Western Blot that's consistent with Lyme, and a July 2009 that's consistent with Bartonella. And of course, the company claims that those tests are not accurate tests and that they do not have a scientific basis behind them and that the CDC doesn't approve of them. I think that's the genesis of their argument. Excuse me, Your Honor. That's absolutely correct, Your Honor, but let me respond with this. The CDC certified that Mr. Dukovic had a confirmed case of Lyme. And I want to highlight this because I don't think I did a very good job of highlighting this in my briefs. Mr. Dukovic's November 2008 blood tests were sent to the Mass. Department of Public Health here, which is charged by the CDC in investigating cases of Lyme. The Mass. Department of Public Health confirmed on the basis of the blood tests that were performed in November 2008 and Dr. Hubbock's clinical exam of that date that Mr. Dukovic had Lyme pursuant to the CDC criteria. And that documentation, which again, as I said, is not highlighted clear enough in my brief, can be found on page 1031 of the record. And again, it's a confirmed case of Lyme disease. And I want to make the point here that the CDC has three categories of confirmed cases of Lyme disease. Confirmed requires blood tests that Dr. Dautweiler said Mr. Dukovic did not have pursuant to the CDC criteria. So if I just may make the third... So it comes down to one blood test submitted to the Mass. Lab, which you say shows that the CDC diagnosed him as having Lyme disease? No, Your Honor. The Mass. Department of Public Health confirmed that Mr. Dukovic had Lyme disease based both on the November 2008 blood test, but also Dr. Hubbock's clinical examination. So Lyme is diagnosed both on clinical exam. You don't need a positive blood test. You need a clinical exam. And so the CDC has a checklist that you'll see on that page that lists the number of clinical symptoms that Mr. Dukovic had. And that brings me really to my third point that Judge Howard found compelling in GENT, the piece of evidence that Ms. GENT didn't have that exists in this case, and that's neuropsych testing. So in GENT, CUNA sent Ms. GENT to an independent neuropsychologist, and that neuropsychologist said that Ms. GENT didn't suffer from... didn't have neuropsychological symptoms. And what she did have were really due to depression. In this case, Mr. Dukovic underwent two days of neuropsychological testing that came back supportive for Lyme disease. It came back with changes to his brain that were consistent with Lyme disease. And I will say that he's also had an EEG and a spec scan that were consistent with changes to his brain that are seen in individuals with Lyme. Now, I want to make one additional point regarding the Lyme disease diagnosis that has sort of been avoided in this case by the standard. Dr. Tramp, who's a Harvard professor and an ophthalmologist, examined Mr. Dukovic and sees him annually, and he said that Mr. Dukovic had changes to his left eye that are consistent with changes to the eyes that are seen in individuals with Lyme. And that's an uncontroverted piece of evidence that has never been dealt with by the standard, but it's important because it's not consistent with the diagnosis of fibromyalgia, which is how the standard explains Mr. Dukovic's physical symptoms, but it is consistent with the diagnosis of Lyme disease. So, you know, the crux of the district court's argument and the district court's finding, and really the standard's argument, is Mr. Dukovic never had Lyme disease. The weight of the evidence contradicts the district court's finding and standards claim in that regard. So if Mr. Dukovic had Lyme disease, then what we're left with is, what's causing his disability today? I don't believe the district court reached a conclusion on that. The question before the district court was whether standard's rejection of his claim in its various iterations was arbitrary or capricious. And I don't think that resolution of the question of whether chronic Lyme disease exists is necessary for a decision in this case one way or another, and I don't read the district court as having decided that question. I agree with your honor. I couldn't agree more. Please be careful about how you phrase things. I think what I've done is I've used Lyme disease and chronic Lyme disease interchangeably, and the difference is here. The district court found that standard was correct in concluding that Mr. Dukovic never even had Lyme. And that's where the error exists. There's substantial evidence in the record to demonstrate that Mr. Dukovic did in fact have Lyme disease. The question that the district court never reached, and I agree that this court doesn't have to reach, is whether chronic Lyme disease is real. But if you take away mental illness, if you take away substance abuse, and you take away fibromyalgia as the cause of Mr. Dukovic's disability in June 2011, what you're left with is chronic Lyme disease, whether or not this court believes it's real. That's what the weight of the evidence shows. So what was the basis for the insurance company saying there was fibromyalgia? The same tests? The physical symptoms? So, Your Honor, Dr. Standard's Dr. Siegel is the only doctor in the record to say that Mr. Dukovic's physical disability in June 2011 was due to fibromyalgia. So his sole basis for this finding is a September 2008 diagnosis of fibromyalgia that was made by Dr. Goldenberg. It's the only diagnosis on the record that was made using the trigger point test, the diagnosis fibromyalgia. But it was discredited as the basis of his physical disability by February of 2009. Dr. Siegel doesn't mention that. He uses that September, that obsolete September 2008 report to certify Mr. Dukovic's diagnosis in June of 2011. We will see if Justice Souter has any questions at this point. Thank you, Your Honor. Mine have been covered. Thank you, Your Honor. Thank you, counsel. Good morning, Your Honors. Brooks McGratton for the appellees, which with me is Ron LaRocca from my office as well. Your Honor, from Standard's point of view, the appeal presents old wine in a new bottle. At a very high altitude looking at this case, fundamentally we have a dispute between consulting physicians and treating physicians. But don't you have, didn't you start out with consulting physicians who have a firm position that chronic Lyme doesn't exist? I would say Standard started out with consulting physicians who have a rich and deep history of the study of Lyme disease, who have published quite a bit in Lyme disease, and let them arrive at their own conclusions with respect to the records of Mr. Dukovic. But you have picked consultants for this case whose position is that chronic Lyme doesn't exist. Well, that is precisely the point that the plaintiff made to the court below. The whole argument framed to Judge Casper was that Standard went out and hired guns for this task. And Judge Casper quite appropriately rejected the contention. And so look at the credentials of the experts hired, particularly Dr. Datweiler and Dr. Siegel. They're both nationally recognized experts in Lyme disease diagnosis and treatment. They have both served on CDC committees and National Institutes of Health committees dedicated to the diagnosis and treatment of Lyme disease. And Standard in no way directed those consultants to reach conclusions one way or the other. Standard sent to those consulting experts the entire record, along with the question posed to Standard, is that what about this claim of chronic Lyme disease? I think it's important to realize that the plaintiff is staking the claim on a very slender read here. And the slender read is, I'm not just disabled by Lyme disease, I am disabled by chronic Lyme disease, and that is the physical condition that takes me beyond 24 months. Now, there are several problems with that approach. First of all, we have a dispute between the experts in the case, between the plaintiff's experts and Standard's experts, over whether there is such a thing as chronic Lyme disease. And secondarily, whether the plaintiff had Lyme disease at all. And Standard's consulting physicians voiced serious doubts about that diagnosis, principally because he was tested several times using CDC-approved criteria. All of those results were negative. Well, not according to your sister. She says one of the results concluded positively. Yes. Ms. Rafik referred to a test result from November of 2008. I have those in my hand. These are from the IGENIX laboratory in California, and those do indicate that the IGENIX result is positive, the CDC-NYS result is negative. Why? Why the difference? I'm sorry. Why the difference? I don't understand enough of the science to respond to that. However, I would say that this is not a new issue for this court. There have been several courts now that have been presented with this dichotomy between IGENIX results and CDC results, and the court can refer to the Allen case, the Harrison case, and the Childers case, all cited in our brief, which talks about this dichotomy between the CDC-approved criteria and IGENIX criteria, and what appears to be a consensus in the scientific community that the IGENIX results are more likely to yield false positives. I think it's important to know what plaintiff is trying to do here, and this is brought out in her brief, she's trying to shift the burden of proof. There's an argument here that the 24-month limitation is akin to a policy exclusion, and therefore the burden shifts to the insurer. I thought the district court said, though I may be wrong, that under, it didn't matter who had the burden, the decision was still not arbitrary and capricious. I think that is a fair statement, but in addition, the court can look at the McDonnell case, the Katsanas case, the Ringwald case, all cited in our briefs, which addresses this very point. But we as a circuit have not answered that question, have we? I'm not aware of a First Circuit precedent on that issue, no. I think the primary question the district court was asked to determine is, is there substantial evidence in the record to support standards to the conclusion that Mr. Dikovic's claim was subject to the 24-month limitation? Plainly, there is expert opinion supporting that the lack of CDC-approved test results the long history of mental illness and drug addiction, there's a fundamentally different approach to the medical history in this case. The plaintiff is saying, yes, we have more than a decade of very serious mental illness and drug abuse, but all that stopped in 2011. And my anxiety, my depression, my cognitive difficulties from 2011 were caused exclusively by chronic Lyme disease. And I think the position of the consulting physicians, the position of standards is you cannot ignore the medical history. And even if we look in isolation to what is going on after the spring of 2011, Your Honor pointed to this before. We have a letter from the plaintiff directed to standard dated April 27, 2011. This is right about at the conclusion of the 24-month period. And the plaintiff tells standard, what is going on? And the plaintiff says, my symptoms have clustered in four primary areas, extreme fatigue and lethargy, intense joint pain, cognitive issues, and depression, anxiety. He goes on to say, of all the symptom areas, the cognitive issues are often the most troubling to me. It is a very long and complex medical record. I think it's helpful to step back and just ask the question in the spring of 2011, why is it this plaintiff could not function as an associate? No one is claiming, really, that he was unable to get on the T, ride into town, sit at a desk. Clearly, the disabling condition is the cognitive limitations, the cognitive dysfunctions. That falls squarely within the 24-month limitation. And I would suggest, even the debate about Lyme disease is largely academic. Because if you examine how the policy defines mental disorder, it rattles off a number of mental disorders, including cognitive dysfunction, regardless of cause. So even if we accept Lyme disease, chronic Lyme disease, was the underlying root cause of what was going on with this plaintiff? The limitation is still there at 24 months. Yeah, their argument is that despite what your policy says, if you look at Rule 1 and Rule 2, you don't get to rely on that contributing condition of mental illness. The district court, I don't think, really got into that. Was that argument presented to the district court? Not as directly as Your Honor is raising the question now. However, I would say there's nothing inconsistent between the rules set forth in the policy and the application of the regardless of cause phrase. Right. The rules simply say, at the end of 24 months, we look at the claim as it stands. And is there a disability caused by some non-limited condition? And by non-limited, we mean something other than depression, anxiety, cognitive dysfunction, chronic fatigue, chronic pain syndrome. And that's precisely the analysis the standard did at the conclusion of the 24-month period. And fibromyalgia, which one of your experts diagnosed, is one of the things which is a means that the policy doesn't cover. That's an exclusion. It is a limited condition. Understand, the standard did pay for the 24 months. Yeah, up to the 24 months, but thereafter. Correct. You're absolutely correct. Yes. I think what's important here is the plaintiff below in the district court invited the trial judge to make a judicial pronouncement that there is chronic Lyme disease and this plaintiff had it. I think that the trial judge quite wisely refused to go down that road. I think the ultimate question about chronic Lyme disease will be resolved someday by medical experts on a record far greater than what we have here. And I think it's inappropriate for the appellate court to make that kind of pronouncement, make a broad sweeping medical pronouncement. But do we have to? Can you, her basic argument is that there's a separate date when you look at all of this and that regardless, your evidence that you're using at that date is evidence that you should not have been able to use in order to reach the conclusion to say there is no benefit beyond the 24 months. Yes, that's a fair characterization. And a standard response to that would be you cannot examine the claimant in isolation and ignore the medical history, but also to put a finer point on it, I think the plaintiff is saying if you look at the, examine the medical record around the spring of 2011, none of the treating physicians are talking about fibromyalgia. And she's right about that. Okay. Standards consulting physicians talk about it. And we have the statement. Based on a very old report, she argues. Based on a very old report. I'm sorry, what's that? Based on a very old report, she argues. Yes. But we also have, if you examine medical records through the time, there's no question the plaintiff is talking about fatigue, lethargy, joint pain. And as of April 2011, the claimant is talking about fatigue, lethargy, joint pain. The fibromyalgia label is not there, but certainly the symptoms are. The GENT, Judge Casper said GENT is instructive. I would say GENT is really binding. Very similar facts. You have a claimant not nearly as profoundly disabled by mental illness as this plaintiff. Near the end of the 24-month limitation, the claimant develops Lyme disease. There's a question about that diagnosis. The, this court, on de novo review, found that the decision by the carrier to restrict the claimant to 24 months was appropriate because the, certainly the history of mental illness created doubts about the veracity of the Lyme disease diagnosis. That's where we are here. Were those policies similar in wording? I don't have the full policies involved in the GENT case, but they appear to be, they appear to have essentially the same position. Yeah. Unless the court has further questions. Well, we'll see if Justice Souter has some questions. No, the question that I wanted to raise was the relationship to the rule of the policy standard, and that's been raised, and I have nothing further. Okay, thank you. Thank you. All rise. The court will take a brief recess. Excuse me. Did you reserve time for rebuttal? I did. I reserved a minute for rebuttal. We will give you rebuttal. Thank you. Thank you, Your Honor. I actually just want to make two points. The first is to your question, Judge Stahl, regarding the use of experts who don't believe that chronic Lyme disease exists. And I will make one point to that. The CDC has accepted that chronic Lyme disease exists. It calls it post-treatment Lyme disease syndrome, and it occurs in 10 to 20 percent of individuals who suffer from Lyme. So to use experts that believe that the illness doesn't exist contradicts what the CDC has said. The second point I want to make is what was alluded to is the standards argument that if Mr. Dukovic has cognitive limitations, regardless of the cause, he is limited under the cause or contributed to language of the mental illness limitation. That argument was not brought up during the internal appeals process, Your Honor. Excuse me. The condition is flatly stated two or three times in the rejection letter and in the post-rejection correspondence. So once again, I think the record does not support the argument. Well, may I respond to that, Your Honor? Yes, you may. It's just the argument that if what was raised during the internal appeals process is if Mr. Dukovic's cognitive limitations were caused by Lyme, he would not be limited. If his cognitive limitations were caused by mental illness or fibromyalgia, he would be limited. And that's the distinction. This is not the Glista case. I appreciate that, Your Honor. Okay, thank you. Judge Stahl. Where would we find the CDC statement that post-Lyme disease does exist? It's not in the record, is it? It is in the record, Your Honor. The printouts from the CDC are in the record, and it's cited, too, in our briefs. So just to help us, do file a Rule 28J letter that specifies where in the record we would find that. I will. Okay. Thank you, Your Honor. Justice Souter, any further questions? No, thank you. Okay. Thank you. Thank you.